1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                                    )
MICHAEL PALMASON,                           )
                                                                    )      Case No. C11-0695RSL
                                    Plaintiff,              )
                                                                    )
                    v.                                           )
                                                                    )      ORDER GRANTING IN PART
WEYERHAEUSER COMPANY, *et al.*,  )      WEYERHAEUSER'S MOTION TO DISMISS
                                                                    )
                                    Defendants.         )
_____ )

            This matter comes before the Court on the "Weyerhaeuser Defendants' Motion to

Dismiss Plaintiffs' Second Amended Complaint" (Dkt. # 158) and the related "Request for

Judicial Notice" (Dkt. # 159).  Plaintiffs allege that the Weyerhaeuser defendants breached their

fiduciary duties to plaintiffs and other participants in Weyerhaeuser's retirement and pension

plans.  In particular, plaintiffs allege that the Weyerhaeuser defendants adopted imprudent

investing policies and guidelines with regards to the total exposure/risk of the investment

portfolio, that the Weyerhaeuser defendants adopted the overly aggressive investment policy to

better their own interests rather for the benefit of the plan participants, and that the

Weyerhaeuser defendants and Morgan Stanley are liable for losses arising from the

implementation of those policies and guidelines.

            The benefit plans at issue are "defined benefit plans" pursuant to which

employees, upon retirement, are entitled to fixed periodic payments regardless of the success or

1    failure of the plans' investments.  "[T]he employer typically bears the entire investment risk and

2    – short of the consequences of plan termination – must cover any underfunding as the result of a

3    shortfall that may occur from the plan's investments."  Hughes Aircraft Co. v. Jacobson, 525

4    U.S. 432, 439 (1999).  If the plan is overfunded (i.e., it has more assets than are necessary to pay

5    existing liabilities), the employer may reduce or suspend its contributions to the plan until the

6    surplus disappears.  Harley v. Minn. Mining and Mfg. Co., 284 F.3d 901, 906 (8th Cir. 2002).

7    Based on these undisputed characteristics of a defined benefit plan, the Weyerhaeuser

8    defendants move to dismiss all of plaintiffs' claims on the ground that plaintiffs lack standing to

9    sue under Article III of the United States Constitution because they cannot allege any concrete,

10   particularized harm.  Defendant Morgan Stanley joins in the motion to dismiss.  Dkt. # 179.

11   **A. SCOPE OF REVIEW**

12              In the context of this motion to dismiss, both parties have submitted evidence

13   outside of the pleadings.  Plaintiffs do not oppose judicial notice of the documents attached as

14   Exhibits A through W of defendants' request for judicial notice (Dkt. # 159-60), but argue that

15   the factual statements and opinions contained therein have not been conclusively established and

16   cannot be construed against plaintiffs.

17              The scope of review for a 12(b)(1) motion is not the same as the scope of review

18   for a 12(b)(6) motion.  In resolving the type of factual attack on jurisdiction that defendants have

19   raised here, the district court may consider evidence beyond the complaint in order to determine

20   whether plaintiffs have standing.  See Warth v. Seldin, 422 U.S. 490, 501-02 (1975); Green v.

21   U.S., 630 F.3d 1245, 1248 n.3 (2011); Savage v. Glendale Union High Sch., 343 F.3d 1036,

22   1039 n. 2 (9th Cir. 2003).  The Court need not presume the truthfulness of plaintiffs' allegations.

23   White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  "Once the moving party has converted the

24   motion to dismiss into a factual motion by presenting affidavits or other evidence properly

25   brought before the court, the party opposing the motion must furnish affidavits or other evidence

26   necessary to satisfy its burden of establishing subject matter jurisdiction."  Savage, 343 F.3d at

1   1039 n. 2.  The Court will, therefore, consider all of the evidence presented in order to determine

2   whether plaintiffs have met their burden of establishing a case or controversy between

3   themselves and defendants within the meaning of Article III.[1]

4   **B. ARTICLE III STANDING**

5              In order to establish standing under Article III, plaintiffs must establish "personal

6   injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed

7   by the requested relief."  Allen v. Wright, 468 U.S. 737, 751 (1984).  Defendants, relying on

8   cases such as David v. Alphin, 704 F.3d 327 (4th Cir. 2013); McCullough v. Aegon USA, Inc.,

9   585 F.3d 1082 (8th Cir. 2009); Harley, 284 F.3d 901 (8th Cir. 2002); and Hill v. Vanderbilt

10  Capital Advisors, LLC, 834 F. Supp.2d 1228 (D.N.M. 2011), argue that plaintiffs cannot show

11  that they were injured by any diminution in the plan assets that may have arisen from the

12  implementation of aggressive investing policies and guidelines because plaintiffs benefits are

13  defined and any threat of plan default or termination is purely speculative.[2]  Plaintiffs maintain

14  that they have standing to litigate claims of misconduct on the part of the plans' administrators

15  because:

16      (1)  the Employee Retirement Income Security Act ("ERISA) authorizes this suit,
17           regardless of whether personal loss or injury exists;

18

19      [1] On March 8, 2013, plaintiffs filed a sur-reply, ostensibly to address defendants' citations to a
20  new Fourth Circuit case, David v. Alphin, 704 F.3d 327 (4th Cir. 2013).  Plaintiffs took the opportunity
    to address all of the issues raised in the motion to dismiss, however, regardless of whether defendant
21  relied on Alphin in reply.  The Court has considered the sur-reply only as to those arguments that
    properly respond to defendants' use of Alphin.
22

23      [2] See also Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-
    Medco Managed Care, LLC, 433 F.3d 181 (2nd Cir. 2005) (applying a similar analysis in context of
24  claims brought by beneficiaries of pharmaceutical benefits plans); Loren v. Blue Cross & Blue Shield of
    Mich., 505 F.3d 598 (6th Cir. 2007) (applying a similar analysis in context of claims brought by
25  beneficiaries of self-insured health benefits plans); Glanton v. AdvancePCS, Inc., 465 F.3d 1123 (9th
    Cir. 2006) (applying a similar analysis in context of claims brought by beneficiaries of pharmaceutical
26  benefits plans).

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS          -3-

(2)  the common law of trusts authorizes beneficiaries to sue for breach of loyalty
       and/or self-dealing even in the absence of loss;

(3)  plaintiffs have a protectable interest in the plan assets, not just in the payments
       to which they are entitled, such that a diminution in the plan assets is a
       personal injury for purposes of Article III;

(4)  the common law of trusts authorizes beneficiaries to seek equitable and
       injunctive relief when a trustee breaches his fiduciary duties;

(5)  the benefit plan was, as a matter of fact, underfunded when this suit was filed;

(6)  policy considerations related to the availability of remedies for a legal wrong
       support a finding that plaintiffs have standing; and

(7)  the relief sought in this lawsuit – both legal and equitable – will benefit
       plaintiffs by protecting the assets of the plan, thereby reducing the risk of
       default and termination.

Each contention is considered below.

### (1)  Statutory Standing to Assert Claims on Behalf of the Plan

Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), a participant in or beneficiary of a benefit plan is authorized to bring a civil action on behalf of the plan seeking equitable relief and/or recovery of any losses the plan suffered as a result of a breach of fiduciary duties.  It is undisputed that plaintiffs have the statutory authority to bring this suit.  Statutory standing does not necessarily confer constitutional standing, however.  See, e.g., Merck-Medco, 433 F.3d at 199.  "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules.  Of course, Art. III's requirement remains:  the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."  Warth, 422 U.S. at 501.[3]

---

[3]  This point is not universally accepted.  It can be, and has been, argued that Article III standing is wholly within Congress' control.  Under this theory, if the legislature creates an express personal right to be free of specific conduct and grants the individual the power to sue to enforce that right, courts should find that the infringement of the right gives rise to personal injury for all claims under Article III.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complaint of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations, quotation marks, and footnotes omitted).  Defendants argue that, because this is a defined benefits plan, plaintiffs cannot establish the first or third elements.

Misconduct by the administrators of a defined benefit plan will generally have no effect on an individual's payments under the plan.  In order to establish the requisite personal injury to pursue an award of monetary damages, the participants in such a plan must show that the alleged breaches of fiduciary duty created an appreciable risk that the defined benefits would not be paid.  In other words, plaintiffs must show that the challenged investment policy and other fiduciary breaches "create[d] or enhance[d] the risk of default by the entire plan."  LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 255 (2008).  Simply establishing that ERISA authorizes plaintiffs to file suit on behalf of the plan seeking equitable relief and/or recovery of any losses the plan suffered does not automatically give plaintiffs constitutional standing to litigate the claims of administrator malfeasance asserted in this case.  Whether plaintiffs have shown that defendant's conduct posed a threat to the viability of the plan at the time this suit was filed is addressed in Section 5 below.  Whether plaintiffs have standing to pursue equitable relief is discussed in Section 4.

---

See Antonin Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 22 Suffolk U. L. Rev. 881, 885 (1983).

1          **(2) Common Law Breach of Loyalty Claim**

2                 When evaluating a litigant's standing to sue, "history and tradition offer a

3    meaningful guide to the types of cases that Article III empowers federal courts to consider."

4    Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 274 (2008).  See also Vermont

5    Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 774 (2000) (noting that Article

6    III's case and controversy requirement "is properly understood to mean cases and controversies

7    of the sort traditionally amenable to, and resolved by, the judicial process") (internal quotation

8    marks omitted).  Thus, the Court must consider whether the judiciary has historically heard

9    claims for monetary damages arising from breach of fiduciary duty in the absence of redressable

10   injury.[4]

11                 Beneficiaries of a trust have long been permitted to seek equitable remedies to

12   enforce the duties owed by the trustee, including the duty of loyalty, the duty to avoid conflicts

13   of interest, and the duty to preserve trust assets, even in the absence of allegations of personal

14   loss or injury.  Where, for example, a trustee purchases trust property in violation of the bar

15   against self-dealing, the beneficiary may bring suit to set aside the sale or to obtain disgorgement

16   of profits even if the trust received a fair price for the property and the beneficiary was not

17   otherwise harmed.  Restatement (Second) of Trusts § 205 and § 206.  See Edmonson v. Lincoln

18   Nat'l Life Ins. Co., __ F.3d __, 2013 WL 4007553, at * 5 (3d Cir. Aug. 13, 2013) ("A

19   requirement of net financial loss would allow fiduciaries to retain ill-gotten profit – exactly what

20   disgorgement claims are designed to prevent – so long as the breaches of fiduciary duty do not

21   harm the plan or beneficiaries.  Accordingly, the nature of disgorgement claims suggest[s] that a

22   financial loss is not required for standing, as a loss is not an element of a disgorgement claim.").

23   The common law of trusts, as set forth in both the case law and the Restatements, provides

24   _____

25          [4] Plaintiffs argue separately that the common law of trusts authorizes a suit seeking purely equitable
     relief for a breach of fiduciary duty.  That argument is addressed in Section 4.  In this section, the Court addresses

26   only whether the common law historically provided beneficiaries with standing to pursue a claim for monetary
     damages in the absence of injury and/or redressability.

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS          -6-

1   various forms of relief to not only rectify, but punish, breaches of fiduciary duty even in the

2   absence of an allegation of loss.  The question, however, is whether plaintiffs can assert a legal

3   claim for damages in those circumstances.

4        Plaintiff has not cited, and the Court has not found, a case in which a beneficiary

5   was permitted to pursue a claim for monetary damages despite the fact that any potential remedy

6   would not inure to his or her benefit.  In most cases in which relief was afforded despite proof of

7   loss – even those in which the "no further inquiry" language is used – the beneficiary who filed

8   suit sought purely equitable relief and/or would clearly benefit from the relief requested.  In

9   Michoud v. Girod, 45 U.S. 503, 553, 557 (1846), for example, the beneficiary's heirs sought to

10  set aside a transaction in which the trustee purchased the testator's entire estate:  the Supreme

11  Court declared the sale void as fraudulent "without any further inquiry."  While the Court was

12  not particularly interested in whether plaintiffs suffered a pecuniary loss, it was clear that the

13  relief requested, recovery of the estate, would provide them a significant benefit.  The

14  Restatement (Second) of Trusts provides further support for the conclusion that a beneficiary

15  asserting a legal claim must show that the relief requested would benefit him.  Where there are

16  several beneficiaries to a trust, only the beneficiary whose individual interests were adversely

17  impacted by the breach may pursue a claim:  other beneficiaries, whose interests were unscathed

18  by the breach and who therefore stand to gain nothing through the litigation, lack standing.  See

19  Restatement (Second) of Trusts § 214 cmt. b.

20       The treatise on which plaintiff relies does not compel the conclusion that claims

21  for monetary damages have historically been asserted against the trustee in the absence of loss.

22  The section of the treatise cited does not touch on standing, but instead addresses the "rhetorical

23  excess" of courts and statutes which speak of an absolute bar on transactions that involve self-

24  dealing.  Austin Wakeman Scott et al., Scott and Ascher on Trusts § 17.2 (5th ed. 2007).  When

25  the authors state that liability for a breach of loyalty exists with "no further inquiry" as to profits

26  made by the trustee or losses incurred by the beneficiaries, it is in the context of a presumption

that transactions involving self-dealing "are voidable without further proof." Id. at n.13.  Thus, the authors are presuming that an equitable remedy benefitting the plaintiff (*i.e.*, setting aside the transaction to put the beneficiary in the position he or she held before the trustee committed the breach of trust) is available.  There is no indication that a legal claim in the absence of loss is cognizable even in the trust context.

The Court is unwilling to create a free-floating cause of action that attaches to any beneficiary, regardless of the extent of his or her interests in the trust property or the outcome of the litigation, simply because the trustee violated one of the many duties owed.  The issue, then, is whether plaintiffs will benefit in some way from the relief requested in this litigation, an issue that is addressed in Sections 4 and 5 below.

### (3)  Protectable Interest in Plan Assets

Plaintiffs assert that they have a protectable interest in the assets of the plan, not just in the payments to which they are entitled under the plan.  The Supreme Court disagrees.  In Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439-40 (1999), the Supreme Court found that the nature of a defined benefit plan – in which the employer is obligated to make up any shortfall in funding – means that "no plan member has a claim to any particular asset that composes a part of the plan's general asset pool."  The general pronouncements on which plaintiffs rely to the effect that trustees hold trust assets for the benefit of the beneficiaries are neither surprising nor informative.  The question for standing purposes is not who has a beneficial interest in the assets, but whether those interests were adversely affected in a way that gives rise to standing to pursue a remedy.  See Graden v. Conexant Sys., Inc., 496 F.3d 291, 295-96 (3d Cir. 2007) ("[A]ny beneficiary whose beneficial interests were affected may sue" to remedy a breach of trust).  Simply stating that plaintiffs are beneficiaries of the trust is insufficient to give rise to standing if the beneficiaries will not benefit from the suit.  "At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS          -8-

1   presentation of issues upon which the court so largely depends for illumination." <u>Mass. v. U.S.</u>

2   <u>Envtl. Prot. Agency</u>, 549 U.S. 497, 517 (2007) (internal quotation marks omitted).  Absent a

3   personal stake in the relief requested, plaintiffs' status as a beneficiary of the plans' assets,

4   standing alone, does not confer standing to sue.

5   **(4)  Common Law Claim for Equitable or Injunctive Relief**

6   Plaintiffs argue that a beneficiary must be permitted to sue a trustee for purely

7   equitable relief designed to ensure the performance of the trust.  In addition to their claims for

8   monetary relief, plaintiffs seek an injunction against future use of the offending investment

9   policy and/or an order removing the fiduciaries from their role.

10   In <u>Shaver v. Operating Eng'rs Local 428 Pension Trust Fund</u>, 332 F.3d 1198,

11   1202-03 (9th Cir. 2003), plan beneficiaries alleged that the trustees had failed to keep records

12   sufficient to verify their annual reports, in violation of ERISA § 1027, and sought injunctive

13   relief in the form of removal of the trustees or an order requiring them to keep better records.

14   The beneficiaries did not allege that they or the plan had suffered a loss as a result of the

15   violation, but sought to enforce the statutory requirements going forward.  In the context of a

16   Rule 12(b)(6) motion, the Ninth Circuit concluded that the failure to allege a loss was not fatal to

17   the beneficiaries' claim:

18   The question of whether a fiduciary violated his fiduciary duty is independent from
    the question of loss. . . . Here, plaintiffs seek purely equitable relief, either to
19   enjoin future misconduct, or to have the trustees removed.  Requiring a showing of
    loss in such a case would be to say that the fiduciaries are free to ignore their
20   duties so long as they do no tangible harm, and that the beneficiaries are powerless
    to rein in the fiduciaries' imprudent behavior until some actual damages had been
21   done.  This result is not supported by the language of ERISA, the common law, or
    common sense.
22

23   <u>Id.</u> at 1203.

24   <u>Shaver</u> did not involve a challenge to plaintiffs' standing under Rule 12(b)(1).

25   Rather, the Ninth Circuit was asked to decide whether the failure to allege damages precluded a

26

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS          -9-

1    claim for injunctive relief under Rule 12(b)(6).  Nevertheless, two courts have cited Shaver for

2    the rather broad proposition that as long as an ERISA plan participant is seeking only equitable

3    relief compelling the trustee to perform its fiduciary duty and/or removing the trustee from its

4    position, the participant has standing regardless of any loss.  J.T. v. Regence Blue Shield, __

5    F.R.D. __, 2013 WL 2444717, at *8 (W.D. Wash. June 4, 2013); Perelman v. Perelman, 2012

6    WL 3704783, at *6 (E.D. Pa. Aug. 28, 2012).  The Third Circuit, however, has taken a more

7    nuanced approach.  Where the beneficiary has alleged the breach of a concrete right afforded by

8    ERISA, such as the statutory disclosure or record-keeping requirements, the beneficiary need not

9    show that he or she was specifically harmed, pecuniarily or otherwise, because the deprivation of

10   a specific statutory right establishes general harm sufficient to confer standing.  Kendall v.

11   Employees Retirement Plan of Avon Prods., 561 F.3d 112, 120-21 (3d Cir. 2009).  A breach of

12   fiduciary duty claim based on nothing more than a contention that the trustee has failed to

13   comply with ERISA, however, was deemed insufficient to satisfy the constitutional standing

14   requirement.  "While plan fiduciaries have a statutory duty to comply with ERISA under

15   § 1104(a)(1)(D), [the beneficiary] must allege some injury or deprivation of a specific right that

16   arose from a violation of that duty in order to meet the injury-in-fact requirement."  Id. at 121.

17          The Court finds the Third Circuit's analysis persuasive.  The purpose of the

18   constitutional standing requirement is to ensure that the plaintiff has an appropriate level of self-

19   interest to actively litigate the issues before the court, promoting a lively adversarial process and

20   the full illumination of the questions presented.  Thus, courts require injury that is "concrete and

21   particularized," as well as "actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S.

22   at 560 (internal quotation marks omitted).  Allowing a beneficiary to sue based on a bare

23   allegation of breach of fiduciary duty, with no identified deprivation of a statutory entitlement,

24   monetary damages, or other personalized injury, risks involving the Court in a hypothetical case

25   in which rights are determined in the abstract with no real benefit to any party.

26          Requiring plaintiffs to allege the deprivation of a specific statutory entitlement or

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS        -10-

1  protection in order to bring a claim for equitable relief is consistent with the holding in Shaver.

2  In that case, the Ninth Circuit determined only that a claim for equitable relief survives a motion

3  to dismiss under Rule 12(b)(6) even if there is no allegation of loss:  the court was not asked to

4  evaluate standing.  Further, the beneficiaries in Shaver alleged a specific breach of a statutory

5  duty, namely the failure to keep the records required by ERISA § 1027, and sought injunctive

6  relief to ensure that the beneficiaries obtained the benefit of that protection in the future.  The

7  question, then, is whether plaintiffs have simply alleged that defendants failed to comply with

8  ERISA or whether they have identified some tangible statutory right of which they were

9  deprived.

10         Plaintiffs allege, among other things, that defendants violated the clear and explicit

11  statutory requirement that they "diversify[] the investments of the plan so as to minimize the risk

12  of large losses, unless under the circumstances it is clearly prudent not to do so."  29 U.S.C.

13  § 1104(a)(1)(C).  Plaintiffs also allege that defendants violated § 1104(a)(1)(A) and § 1106(b)(1)

14  when they created and executed the challenged investment policy not for the exclusive benefit of

15  the plan participants and their beneficiaries, but in order to increase Weyerhaeuser's net income

16  and stock prices for the benefit of the company and its senior executives.  The deprivation of

17  these statutory rights and protections gives rise to a sufficiently concrete and particularized

18  injury to allow plaintiffs to seek injunctive relief, even if they cannot establish that pecuniary

19  harm has occurred.  As the Ninth Circuit noted in Shaver, to hold otherwise would leave the

20  beneficiaries powerless to rein in the fiduciaries' allegedly imprudent behavior until after actual

21  damage had been done.

22         Allowing plaintiffs to seek equitable forms of relief related to violations of express

23  statutory rights and protections is also consistent with the Ninth Circuit's decisions in Waller v.

24  Blue Cross of Cal., 32 F.3d 1337 (9th Cir. 1994), and Amalgamated Clothing & Textile Workers

25  Union, AFL-CIO, 861 F.2d 1406 (9th Cir. 1988).  In both cases, participants in a defunct

26  pension plan alleged that the fiduciaries had engaged in self-dealing and brought suit seeking

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS          -11-

1  damages and injunctive relief.  Although the Ninth Circuit focused solely on issues related to

2  statutory, rather than constitutional, standing, the end results were that the claims for legal

3  damages were dismissed, while the equitable claims for constructive trusts were allowed to

4  proceed.  In order to allow plaintiffs to pursue a constructive trust, the court had to stretch the

5  statutory right to sue to include former plan participants who were seeking remedies that would

6  inure to their individual benefit, rather than to the benefit of the plan.[5]  The court was willing to

7  do so based almost entirely on its conviction that fiduciaries who breach their express duty of

8  loyalty must not be permitted to keep ill-gotten profits, for fear that unremedied misuse and

9  mismanagement of plan assets would threaten one of the primary goals of ERISA.  Permitting

10  the plaintiffs in this case to pursue equitable relief for defendants' alleged failure to comply with

11  express statutory requirements and/or prohibitions will further the policy judgments that

12  motivated Waller and Amalgamated Clothing.

13       Defendants argue that, notwithstanding Shaver, Waller, and Amalgamated

14  Clothing, the Ninth Circuit's decision in Glanton v. AdvancePCS Inc., 465 F.3d 1123 (9th Cir.

15  2006), precludes claims for equitable relief.  The plaintiffs in Glanton were not seeking equitable

16  relief, however, and its only mention occurs in the context of the court distinguishing ERISA

17  from the False Claims Act.  Under the latter, a plaintiff in a *qui tam* action is assigned part of the

18  government's claim, giving him a direct stake in the litigation for standing purposes.  ERISA, on

19  the other hand, "gives plan beneficiaries nothing; any monetary recovery goes to the plans - as

20  would the benefits of any injunctive relief."  Glanton, 465 F.3d at 1125-26.  The court was not,

21  as defendants would have it, saying that beneficiaries of an ERISA plan can never seek monetary

22  or injunctive relief.[6]  The point was only that the statute itself, unlike the False Claims Act, does

23

24       [5] ERISA was subsequently amended to address the ability of former pension plan participants and
25  beneficiaries to sue.  Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1455 (9th Cir. 1995).

26       [6] Later in the decision, the court acknowledges that the way in which an ERISA plan is organized and the
nature of plaintiffs' claims will inform the analysis of whether plaintiff has a stake in the lawsuit sufficient to

1  not assign to participants a portion of the plan's claim or otherwise give them a stake in the

2  outcome sufficient to satisfy the injury-in-fact requirement.  Whether plaintiffs have, in fact,

3  suffered injury that can be redressed in the litigation must be determined in light of the facts and

4  governing law, not reference to a statutory assignment.  In this case, plaintiffs have alleged

5  fiduciary self-dealing in violation of express rights and protections set forth in ERISA that could

6  be remedied through a favorable ruling.  The Court finds, in keeping with the analysis in Shaver,

7  Waller, and Amalgamated Clothing, that equitable relief is available in these circumstances to

8  rein in the alleged abuses and statutory violations, even if no monetary loss has yet occurred.

9       **(5)  Funding Status of Plan**

10          Plaintiffs argue that they have standing to pursue monetary as well as injunctive

11  relief under ERISA because the diminution in the plan assets constitutes "personal injury fairly

12  traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the

13  requested relief."  Allen, 468 U.S. at 751.  As discussed in Section 1, misconduct by the

14  administrators of a defined benefit plan, such as that at issue here, has no effect on an

15  individual's benefit payments under the plan, and therefore causes no injury, unless the alleged

16  breaches of fiduciary duty create an appreciable risk of default by or termination of the entire

17  plan.  See LaRue, 552 U.S. at 255.  The Supreme Court explained the salient features of a

18  defined benefit plan:

19          Such a plan, as its name implies, is one where the employee, upon retirement, is
20          entitled to a fixed periodic payment . . . .  [T]he employer typically bears the entire
            investment risk and - short of the consequences of plan termination - must cover
21          any underfunding as the result of a shortfall that may occur from the plan's
            investments.  Conversely, if the defined benefit plan is overfunded, the employer
22          may reduce or suspend his contributions. . . .  Given the employer's obligation to
            make up any shortfall, no plan member has a claim to any particular asset that
23          composes a part of the plan's general asset pool . . . .  Since a decline in the value
            of a plan's assets does not alter accrued benefits, members similarly have no
24

25  ────────────────────

26  establish standing, citing Kayes, 51 F.3d at 1453.  In Kayes, plaintiffs were found to have standing to pursue both
    monetary and equitable relief.

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS       -13-

1    entitlement to share in a plan's surplus . . . .

2  Hughes Aircraft, 525 U.S. at 439-40 (internal quotation marks and citations omitted).

3          The target funding level for defined benefit plans is 100%, meaning that the

4  actuarial value of the plan's assets equals the present value of the plan's benefit obligations.  If

5  the assets exceed the obligations, the plan is overfunded.  If the present value of the obligations

6  exceed the assets, the plan is underfunded.  Plaintiffs rely on the Declaration of Ian H. Altman,

7  FSA (Dkt. # 183) for the proposition that Weyerhaeuser's plan was funded at only 76% or

8  85.5% at the time this action was filed.  The Court finds Mr. Altman's analysis unpersuasive.

9  First, as to his conclusion that the plan is significantly underfunded, Mr. Altman ignores

10  ERISA's minimum funding standards (the Adjusted Funding Target Attainment Percentage or

11  "AFTAP") in favor of a comparison of numbers taken from Weyerhaeuser's SEC reports and

12  the application of the Pension Benefit Guaranty Corporation's method for calculating plan assets

13  and liabilities upon termination.  Mr. Altman does not explain why the Court should reject the

14  funding analysis specified by the statute at issue for determining how well a plan is funded on a

15  particular date.  Mr. Altman justifies his preference for less relevant data and methods on the

16  ground that the AFTAP takes a long view of assets and liabilities:  he (and plaintiffs) would

17  prefer a calculation that shows every bump and hiccup in the plan's performance.  But the goal

18  here is to determine whether plaintiffs' future benefits are in danger, an inherently long-term

19  proposition, making the AFTAP particularly suitable as an analytic framework.  Second, this

20  action was filed in April 2011, and Mr. Altman's alternative calculations are based on numbers

21  taken from the end of 2011 and the end of 2012.  Because standing must be present at the time

22  suit is brought (Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 975-76 (Fed. Cir. 2005)),

23  these alternative calculations are not particularly helpful.

24          In the alternative, Mr. Altman utilizes the AFTAP and concludes that the plan was

25  underfunded or on the verge of becoming underfunded at the time this action was filed.  The

26  specific data points are as follows:

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS          -14-

| Date | AFTAP |
|------|-------|
| January 1, 2010 | 120.00% |
| January 1, 2011 | 102.10% |
| June 27, 2012 | 98.50% |

Even if the Court assumes that the plan had dipped below the 100% funding level when this action was filed, Mr. Altman's declaration is insufficient to establish the relevant fact: that the alleged breaches of fiduciary duty created an appreciable risk of default by or termination of the plan. At most, the plan was underfunded by less than 1.5% at some point in mid-2011. There is no evidence that such a modest deficit of a multi-billion dollar plan posed any threat to its continued viability or its ability to make payments to plaintiffs. In fact, when Mr. Altman mentions adverse impacts of underfunding – such as the inability to pay lump sum benefits and/or the need to freeze the accrual of new benefits – he is talking about plans that have fallen below 80% and 60% of the target, respectively. There is no indication that a funding gap of, at most, 1.5% had any impact on any aspect of the plan or that Weyerhaeuser was not more than capable of making up any shortfall as required. Thus, even if the Court assumes that the plan were slightly underfunded at the time this action was filed, plaintiffs still lack standing because the modest shortfall posed no threat to their present or future benefit payments.

Having failed to show that the alleged diminution in the value of the plan assets posed a threat to plaintiffs' interests or that a damage award in favor of the plan would in any way benefit them, plaintiffs do not have standing to assert legal claims for monetary damages.

### (6) Policy Considerations Regarding the Availability of Remedies

The policy considerations behind Article III's case and controversy requirement and the countervailing need to ensure that ERISA's protections retain vitality have informed the above analysis. The Court finds that an appropriate balance of interests is achieved by requiring beneficiaries who seek monetary relief to show that they suffered personal injury and are likely to benefit from an award of damages, but allowing claims for injunctive relief based only on a

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS        -15-

1  showing of a deprivation of a specific right or protection under ERISA.

2  **(7)  Indirect Benefits of Relief Sought**

3  Finally, plaintiffs argue that they will, in fact, benefit from the relief requested in
4  this lawsuit because every additional dollar added to the corpus of the plan will reduce the risk
5  of plan default or termination.  Any "risk" of plan default or termination is highly speculative,
6  however.  In order for plaintiffs to be at risk of suffering actual loss, the challenged investment
7  policy would have to result in far larger losses than the plan actually experienced (even in 2008-
8  2010 when the mortgage crisis was most acute), Weyerhaeuser would have to be unable to make
9  up any shortfall, the plan would have to terminate in an underfunded state, and the Pension
10 Benefit Guaranty Corporation would have to refuse to pay full benefits to the named plaintiffs.
11 Some quantum of reduction of a highly speculative risk does not provide the kind of "concrete
12 and particularized" injury required by Article III.

13 **C.  RIPENESS**

14 Defendants' ripeness argument is based on the same injury-in-fact arguments that
15 underpin their standing analysis.  The same rulings are appropriate:  plaintiffs' claims for
16 injunctive relief related to violations of specific statutory rights are ripe, but their general
17 fiduciary duty claims and their claims for monetary damages/disgorgement are not.

18 **D. PROHIBITED TRANSACTION CLAIMS**

19 As discussed above, plaintiffs' allegations regarding defendants' self-dealing in
20 violation of express statutory prohibitions states a concrete and particularized harm – the
21 deprivation of an express right or protection granted by ERISA – for which plaintiffs may seek
22 equitable relief.

23

24 For all of the foregoing reasons, the Weyerhaeuser defendants' motion to dismiss
25 (Dkt. # 158) is GRANTED in part and DENIED in part.  Plaintiffs' legal claims for monetary
26 relief are DISMISSED for lack of standing.  Plaintiffs may, however, pursue claims for

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS          -16-

1   injunctive relief related to the deprivation of specific statutory rights and protections.  Defendant

2   Morgan Stanley has joined in the Weyerhaeuser defendants' motion and is therefore bound by

3   this order.

4

5          Dated this 23rd day of August, 2013.

6

7          *MM S Lasnik*

8          Robert S. Lasnik
           United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING IN PART
WEYERHAEUSER'S MOTION TO DISMISS          -17-